UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Bankers Association, and Lake Central Bank, | Civ. No. 23-2177 (PAM/ECW) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Federal Deposit Insurance Corporation, and Martin J. Gruenberg, in his official capacity as Chairman of the Federal Deposit Insurance Corporation, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss. For the following reasons, the Motion is granted.

**BACKGROUND**

Plaintiffs Minnesota Bankers Association is a "trade association that represents 281 commercial banks, trust companies, and savings associations that have an official branch in the state of Minnesota." (Am. Compl. (Docket No. 13) ¶ 27.) Plaintiff Lake Central Bank is "a Minnesota state-chartered commercial bank with its main office located in Annandale, Minnesota" and a member of the Association. (Id. ¶ 31.) Plaintiffs challenge a Financial Institution Letter ("FIL") issued by Defendant Federal Deposit Insurance Corporation ("FDIC") in June 2023. Plaintiffs contend that this guidance, called FIL 32, "is a legislative rule promulgated without adherence to essential administrative procedures." (Id. ¶ 7.) Plaintiffs ask the Court to permanently enjoin the enforcement of

FIL 32 and declare it invalid.

FIL 32 addresses the practice of charging multiple insufficient funds fees, or NSF fees, for the same transaction. A bank may charge a consumer multiple NSF fees when, for example, a merchant attempts more than once to cash a check for which the consumer's account has an insufficient balance.

The FDIC hypothesizes that charging a consumer multiple NSF fees could in some circumstances run afoul of existing banking law. The FDIC is statutorily mandated to ensure that "insured depository institution[s]" are not "engaging in unsafe or unsound practices in conducting the business of the depository institution."  12 U.S.C. §§ 1818(a)(2)(A)(i), (a)(2)(B).  Should the FDIC determine that an institution is engaged in unsafe or unsound practices, it may, after notice and a hearing, terminate the institution's FDIC insured status.

The FDIC issued a predecessor to FIL 32, FIL 40, in August 2022.[1] Both FIL 40 and FIL 32 reflect the FDIC's theory that charging multiple NSF fees can constitute an "unsafe or unsound practice[]."  12 U.S.C. §§ 1818(a)(2)(A)(i), (a)(2)(B). Thus, FIL 40 stated that it was "guidance to ensure that supervised institutions are aware of the consumer compliance risks associated with assessing multiple nonsufficient funds (NSF) fees arising from the re-presentment of the same unpaid transaction."  FDIC, <u>Supervisory Guidance on Multiple Re-Presentment NSF Fees</u> (August 2022) (Compl. Ex. A (Docket No. 1-1)).  FIL

---

[1] Plaintiffs' original Complaint challenged FIL 40.  After Defendants pointed out that FIL 32 was the operative guidance on the issue and that FIL 40 had been rescinded, Plaintiffs amended their Complaint.  The Amended Complaint now challenges FIL 32 and FIL 40 "to the extent FIL 40 retains any force or effect."  (Am. Compl. ¶ 6.)

2

32 revised FIL 40 in June 2023, but did not change the substance of the guidance. FIL 32 warns financial institutions that,

> [w]hile specific facts and circumstances ultimately determine whether a practice violates a law or regulation, the failure to disclose material information to customers about re-presentment and fee practices has the potential to mislead reasonable customers, and there are situations that may also present risk of unfairness if the customer is unable to avoid fees related to re-presented transactions.

FDIC, Supervisory Guidance on Multiple Re-Presentment NSF Fees (June 2023) (Compl. Ex. B (Docket No. 1-2)). The FDIC pointed out two specific "potential risks": when a bank's disclosures "do not adequately advise customers of this practice" those disclosures may be deceptive, and "if multiple NSF fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for customers to bring their account to a positive balance in order to avoid the assessment of additional NSF fees," the bank may be committing an unfair practice. Id. at 1-2. T

FIL 32 thus "encouraged" institutions "to review their practices and disclosures regarding the charging of NSF fees for re-presented transactions" and provided options for "risk-mitigation practices." Id. at 2. The FDIC advised banks that it would "take appropriate action to address consumer harm and violations of law" during its supervision and enforcement activities, and would focus on "identifying re-presentment related issues and ensuring correction of deficiencies and remediation to harmed consumers, when appropriate." Id. at 3. FIL 32 also states that, if banks identify NSF issues, "the FDIC expects supervised financial institutions" to take several actions, including, "full corrective action, including providing restitution to harmed customers . . . ." Id.

Plaintiffs contend that FIL 32 constitutes a rule that requires them to make changes to their policies with regard to charging multiple NSF fees. The Amended Complaint contains four counts, all brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Count I alleges that FIL 32 was implemented without the APA's required notice and comment period. Count II claims that FIL 32 constitutes arbitrary and capricious agency action. Count III asserts that the FDIC exceeded its statutory authority by attempting to define what practices are unfair or deceptive under the Federal Trade Commission Act, 15 U.S.C § 57a(a)(1)(B). And Count IV alleges that FDIC violated its own regulations in issuing FIL 32 because those regulations prohibit enforcement actions based on supervisory guidance.

The FDIC seeks dismissal of all counts, arguing first that subject-matter jurisdiction is lacking because Plaintiffs do not have standing, because the relief they seek would not redress any alleged injury. The FDIC also contends that Plaintiff's claims fail on the merits because FIL 32 does not impose rights or obligations, is not a binding legislative rule, and does not give rise to any legal consequences.

**DISCUSSION**

**A.      Standing**

Because the FDIC challenges Plaintiffs' standing, that question must be addressed first. See Brown v. Medtronic, Inc., 628 F.3d 451, 455 (8th Cir. 2010) (The court "must address questions of standing before addressing the merits of a case where standing is called into question."). The threshold inquiry is whether Plaintiffs have established the "'irreducible constitutional minimum of standing' [by] a showing of 'injury in fact' to the

plaintiff that is 'fairly traceable to the challenged action of the defendant,' and 'likely [to] be redressed by a favorable decision.'" Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Lujan, 504 U.S. at 561 (noting that the party invoking the Court's jurisdiction bears the burden to establish the elements of standing). In this case, as discussed in more detail below, the standing inquiry overlaps with the merits, and in particular whether the FIL constitutes final agency action to which the APA applies.

The FDIC contends that Plaintiffs cannot demonstrate the final element of the standing analysis: that their injury is likely to be redressed by a favorable decision.[2] See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998) (redressability is the "likelihood that the requested relief will redress the alleged injury"). Plaintiffs' alleged injury is a procedural one: the FDIC promulgated requirements for NSF fees without the benefit of the APA's rulemaking procedures. Plaintiffs seek relief in the form of a declaration that FIL 32 is invalid and a permanent injunction against its enforcement.

Plaintiffs remain required to minimize risk and to comply with statutory unfair-and-deceptive-practices prohibitions. Plaintiffs claim that if the FDIC vacates FIL 32, they will not have to monitor their policies regarding multiple re-presentment fees, and will not be required to develop consumer disclosures about their policies in that regard. But Plaintiffs

---

[2] The FDIC does not challenge the Association's standing to bring suit on behalf of its members. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 181 (2000) (discussing associational standing).

CASE 0:23-cv-02177-PAM-ECW   Doc. 34   Filed 04/08/24   Page 6 of 8

remain obligated not to engage in deceptive and unfair practices and acts. Rescinding FIL 32 will have no impact on Plaintiffs' statutory obligations.

Plaintiffs argue that their burden to establish redressability is lessened because they assert only a procedural injury. See Iowa League of Cities v. EPA, 711 F.3d 844, 870-71 (8th Cir. 2013). The practical implication of Plaintiffs' argument is that, because FIL 32 is a regulation that was adopted without complying with the APA's requirements, they have been injured because they are forced to comply with FIL 32. But that argument puts the cart before the horse, presuming that FIL 32 prescribes conduct rather than offers guidance. A procedural injury requires showing first that the agency action in question is a final one. See Massachusetts v. EPA, 549 U.S. 497, 518 (2007) (A litigant with a procedural right "has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant.") (emphasis added). Thus, the lesser burden on which Plaintiffs rely applies only if the agency action in question is subject to the APA in the first instance. See Sierra Club v. EPA, 699 F.3d 530, 533 (D.C. Cir. 2012) ("Having shown its members' redressable concrete interest, [a petitioner association] can assert violation of the APA's notice-and-comment requirements, as those procedures are plainly designed to protect the sort of interest alleged.") (emphasis added). Plaintiffs only have a "redressable concrete interest" if FIL 32 is a final rule to which the APA applies. As discussed below, FIL 32 is not a final rule under the APA.

6

B.     **Final Agency Action**

The APA provides a right to judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v Spear, 520 U.S. 154, 177–78 (1997) (internal citations and quotation marks omitted). The "touchstone" of the analysis is "whether an agency announcement is binding on regulated entities or the agency." Iowa League of Cities, 711 F.3d at 862. "[A]n agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding or is applied by the agency in a way that indicates it is binding." Gen. Elec. Co. v. EPA, 290 F.3d 377, 383 (D.C. Cir. 2002) (citations omitted).

The FDIC's policies provide that FIL 32 is not final agency action to which the APA applies, providing that "supervisory guidance does not have the force and effect of law" but rather merely "outlines the FDIC's supervisory expectations or priorities and articulates the FDIC's general views regarding appropriate practices for a given subject area." Statement Clarifying the Role of Supervisory Guidance, 12 C.F.R. § Pt. 302, App. A (Apr. 1, 2021). As discussed above, there are no legal consequences that flow from FIL 32—the FDIC will not institute any enforcement actions based on FIL 32, but rather will take action for violations of an institution's statutory obligations.

Nor have Plaintiffs demonstrated that the FDIC applies FIL 32 in a way to indicate

7

that it is binding. FIL 32 describes certain conduct that could, depending on the circumstances, violate the FTCA. FIL 32 does not state that charging multiple representment fees for the same transaction will violate the FTCA, but rather that doing so and failing to adequately disclose the practice may be a violation of the statute. Plaintiffs cannot point to any FDIC examination or decision that relies on FIL 32 as the basis for the agency's action. FIL 32 is not a final action to which the APA applies. Plaintiffs have not established that their alleged injury will be redressed by the relief they request, and they therefore lack standing.

**C.     Other Issues**

The FDIC argues that Plaintiffs' challenge to FIL 32 is not ripe, and that Counts II and IV specifically are unripe for adjudication. The FDIC also contends that FIL 32 is not arbitrary and capricious and that FDIC acted within its authority in issuing FIL 32. Because Plaintiffs lack standing, a decision on these issues is unnecessary to the resolution of this Motion.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss (Docket No. 17) is **GRANTED** and the Amended Complaint (Docket No. 13) is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:        April 8, 2024

                                            *s/Paul A. Magnuson*
                                            Paul A. Magnuson
                                            United States District Court Judge